IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| JOSEFA D. CORDOVA LIMA, On Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HOUSEKEEPING SERVICES OF HILTON HEAD, LLC., DMS LLC, D/B/A DELKO ENTERPRISE INC., DAVID L. MYERS, and CARLOS DANTE ACOSTA *Individually,*<br><br>Defendants. | CIVIL ACTION NO.: 9:22-cv-04490-BHH<br><br>COLLECTIVE ACTION COMPLAINT<br>(Jury Trial Requested) |

Plaintiff Josefa D Cordova Lima, ("Plaintiff" or "Lima") individually, and on behalf of herself and all others similarly situated, by way of her Complaint, alleges and show unto this Honorable Court the following:

**NATURE OF CLAIM**

1. Defendants Housekeeping Services of Hilton Head LLC ("HSHH"), DMS LLC. ("DMS"), David L. Myers ("Myers") and Carlos Dante Acosta ("Acosta") (collectively "Defendants") have exploited Plaintiff as well as all other similarly situated Undocumented Laundry Workers, the majority of which are women, by forcing them to work long hours under terrible conditions and stealing their wages.

2. Plaintiff brings this action for overtime violations under the Fair Labor Standards Act, as amended (the "FLSA" or the "Act"), 29 U.S.C. §201 et. seq. Plaintiff brings this action as a collective action pursuant to 29 U.S.C. §216(b) on behalf of herself

and other similarly situated Undocumented Laundry Workers employed by the Defendants who suffered damages because of Defendants' violations of the FLSA.

3. In addition, Plaintiff brings Rule 23 class claims against the Defendants on behalf of herself as well as similarly situated Undocumented Laundry Workers for unpaid wages, treble damages, and other relief under the South Carolina Payment of Wages Act ("SCPWA"), S.C. Code Ann § 41-10-10, *et seq*.

4. Plaintiff also brings claims for Unjust Enrichment, Conversion and Conspiracy.

## PARTIES, JURISDICTION AND VENUE

5. Plaintiff Lima is a resident of Hilton Head, South Carolina.

6. Defendant, HSHH, is a for-profit Delaware corporation, registered with the South Carolina Secretary of State doing business in Bluffton, South Carolina.

7. Defendant, DMS., is a for-profit corporation, registered with the South Carolina Secretary of State doing business in Bluffton, South Carolina.

8. Defendant Myers, ("Myers") owns and manages HSHH. He employs persons such as Plaintiff and other similarly situated Undocumented Laundry Workers to work on his behalf in providing labor for the business. Defendant Myer is within the personal jurisdiction and venue of this Court.

9. Defendant Acosta, owns and manages DMS. Defendant Acosta is within the personal jurisdiction and venue of this Court.

10. Venue is proper in this District because the Defendants have conducted substantial, continuous and systematic commercial activities in Beaufort County.

Additionally, the unlawful labor practices and policies giving rise to Plaintiff's claims were committed in the Beaufort Division of this Court.

11. This Court has jurisdiction of the Plaintiff's claims brought under the FLSA pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216 (b).

12. This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367 over Plaintiff's pendent claims, which are brought pursuant to the law of the State of South Carolina, because those claims arise out of the same transaction or occurrence as the federal claims alleged herein.

## CLASS CLAIMS

13. Plaintiff brings this action as a collective action pursuant to 29 U.S.C. §216(b) on behalf of herself and all similarly situated Undocumented Laundry Workers who were not paid overtime when they worked over forty hours in a work week. The class consists of:

> *All current and former Undocumented Laundry Workers that worked at 10A Dunnalan's Alley, Hilton Head, SC and were not paid time and half of their regular rate for all hours worked in excess of forty (40) hours per work week from [three years from the date of Court's Conditional Certification Order] to the present.*

14. Plaintiff also bring this action as an opt-out class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of a class of employees, who were employed by Defendants within the three (3) years prior to the filing of this lawsuit and who had their rights violated under the SCPWA. The class consists of

> *All current and former Undocumented Laundry Workers that worked at 10A Dunnalan's Alley, Hilton Head, SC and did not receive their full hourly wage because part of their wages were taken by Housekeeping Services of Hilton Head,*

*LLC, or DMS, also known as Delko Enterprise Inc., within three years from the filing of this action.*

15.   Upon information and belief, this action satisfies the requirements of the South Carolina Rules of Civil Procedure 23(a), as alleged in the following particulars:

   a. The proposed Plaintiff's class is so numerous that joinder of all individual members in this action is impracticable;

   b. There are questions of law and/or fact common to the members of the proposed Plaintiff's class;

   c. The claims of Plaintiff are typical of the claims of the proposed Plaintiff's class; and

   d. Plaintiff will fairly and adequately protect the interests of the class. The class is sufficiently numerous that joining all members is impracticable.

16.   In addition, upon information and belief, this action satisfies one or more of the requirements of the South Carolina Rules of Civil Procedure 23(b), because the questions of law and/or fact common to the members of the proposed Plaintiff class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## FACTUAL ALLEGATIONS

17.   Defendant, HSHH is an industrial laundering business that along with the other Defendants, jointly employed Plaintiff as well as other Undocumented Laundry Workers most of whom are women. Myers is President and Chief Executive Officer of HSHH.

18.   HSHH operates a large commercial laundry facility located at 10A Dunnalan's Alley, Hilton Head, SC. HSHH processes millions of pounds of linens for resorts, hotels, and restaurants.

19. Myers owns and manages HSHH. Myers regularly exercised the authority to hire and fire employees, determine the work schedules of employees, set the rate of pay of employees, and control the finances and operations of HSHH business.

20. DMS is a staffing agency that steers undocumented workers to HSHH and Myers.

21. Acosta owns and operates the staffing company. DMS does business as Delko Enterprises LLC. Acosta and DMS provide HSHH and Myers with Undocumented Laundry Workers.

22. The Defendants target undocumented workers to save on labor costs.

23. HSHH and Myers hire Undocumented Laundry Workers through Acosta and DMS so they can claim they do not hire Undocumented Laundry Workers.

24. Moreover, HSHH and Myers hire Undocumented Laundry Workers through Acosta and DMS to benefit from cheap, undocumented labor without fear of meaningful penalties.

25. Plaintiff was jointly employed by the Defendants from April of 2019 until approximately March 30, 2022.

26. Plaintiff and similarly situated Undocumented Laundry Workers primary responsibilities included laundering, drying, ironing, and folding linens for commercial use.

27. Plaintiff and similarly situated Undocumented Laundry Workers operated loud, dangerous machines and were exposed to toxic chemicals.

28. The laundry facility is in a large, poorly ventilated, dark, un air-conditioned warehouse.

29.     In the summer, the temperature would get well above 100 degrees. Sometimes it got so hot that Plaintiff and similarly situated Undocumented Laundry Workers passed out from the heat.

30.     At Myers instruction HSHH operates seven (7) days a week and 365 days out of the year.

31.     Plaintiff and similarly situated Undocumented Laundry Workers were paid hourly and were non-exempt employees for purposes of the overtime compensation provisions of the FLSA.

32.     When Plaintiff started working for Defendants, she was undocumented. Plaintiff came to the United States from El Salvador. At all times relevant to this complaint Plaintiff was undocumented.

33.     HSHH and Myers paid Plaintiff and the Undocumented Laundry Workers lower hourly wages than they paid the documented employees.

34.     HSHH and Myers forced Plaintiff and the similarly situated Undocumented Laundry Workers to work long hours by threatening to fire them if they did not stay until all the work was complete.

35.     HSHH managers told Plaintiff and the similarly situated Undocumented Laundry Workers not to come back if they did not stay at work until all the work was complete.

36.     Yet HSHH managers discourage the documented workers from working overtime.

37. This is because HSHH, Myers, Acosta and DMS did not pay the Undocumented Laundry Workers overtime compensation when they worked over forty hours in a work week.

38. Therefore, Defendants required Undocumented Laundry Workers to work the bulk of the overtime to save on labor costs.

39. The Defendants codetermined key terms and conditions of the Undocumented Laundry Workers pay.

40. DMS and Acosta handled the payroll and kept track of the hours that the Undocumented Laundry Laborers worked.

41. Defendants HSHH, Myers, DMS and Acosta agreed not to pay the Undocumented Laundry Laborers overtime compensation.

42. Acosta and DMS retained $1 to $1.50 of the Undocumented Laundry Workers' hourly wage.

43. Acosta and DMS did not given written notification to Plaintiff or the similarly situated Undocumented Laundry Workers of the amount and terms of the deductions rather they just retained a portion of their wages.

44. The more hours the Undocumented Laundry Workers worked, the more that Acosta and DMS profited off the Undocumented Laborers.

45. Myers and HSHH did not pay the Plaintiff as well as similarly situated undocumented laundry workers at a rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a work week.

46. Plaintiff and similarly situated Undocumented Laundry Workers often worked twelve (12) to fourteen (14) hour days.

47. During the summer, Plaintiff and similarly situated Undocumented Laundry Workers regularly worked seven (7) seven days a week between seventy-five (75) to eighty-five (85) hours a work.

48. In fact, on a few occasions Plaintiff worked 24 hours straight. Sometimes Plaintiff worked so many hours that she slept in her car between shifts.

49. Plaintiff and similarly situated Undocumented Laundry Workers had no choice but work these hours. They were not allowed to take a day off or leave early. Myers and HSHH told them they would be fired if they did not work the hours they were instructed to work.

50. The Defendants jointly employed Plaintiff and similarly situated Undocumented Laundry Workers.

51. Defendants Acosta and DMS processed payroll for the Undocumented Laundry Workers. Their checks were drawn from an account that said Delko Enterprises Inc.

52. Defendants Acosta and DMS kept records on Plaintiff and similarly situated Undocumented Laundry Workers such as their rate of pay, and hours worked.

53. Defendants Acosta and DMS issued Plaintiff and similarly situated Undocumented Laundry Workers their IRS Form W2 at the end of the year.

54. Defendants Acosta and DMS vetted Plaintiff and similarly situated Undocumented Laundry Workers for Myers and HSHH.

55. Acosta and DMS told Myers and HSHH who they could hire based on which Undocumented Laundry Workers had Individual Taxpayer Identification Number (ITIN).

56. Acosta and DMS charged Plaintiff and the other similarly Undocumented Laundry Workers to obtain (ITIN).

57. While they waited to receive their ITIN from the IRS. Plaintiff and the other similarly Undocumented Laundry Workers used relatives' ITIN numbers so they could work.

58. The managers at HSHH called Acosta and DMS when they wanted to fire Undocumented Laundry Workers to request that they tell the worker they were terminated.

59. Myers, HSHH, Acosta and Delco did not pay Plaintiff and the other undocumented laundry workers time and half of their regular hourly wage when they worked in excess of 40 hours during a work week.

60. Once Plaintiff obtained her Permanent Resident Card she was no longer paid by Acosta and Delco. She was paid directly from Myers, and HSHH.

61. When Plaintiff obtained her work permit, Defendants Delco and Acosta no longer took $1.00 to $1.50 an hour from their hourly wage.

62. When Plaintiff obtained her Permanent Resident Card, she was paid time and half when she worked over forty hours a week. However, the Defendants rarely scheduled her to over 40 hours a week, instead the Defendants require the Undocumented Laundry Workers to work the bulk of the overtime hours.

63. Defendants forced the Undocumented Laundry Laborers to work most of the overtime because they did not pay them time and half of their regularly hourly wage.

64. Defendants cheated Plaintiff and similarly situated Undocumented Laundry Workers because they knew that the undocumented workers would be scared to report them or file a lawsuit due to their immigration status.

65. When Plaintiff and similarly situated Undocumented Laundry Workers complained about the low wages and failure to be paid overtime, Defendants told them there was nothing they could do about because they shouldn't be working in the first place because they had no "papers".

66. Defendants Delko and Acosta has an agreement with Defendants HSHH and Defendant Myer to hire undocumented workers so they could keep a portion of their earned wages for themselves and not pay them overtime.

67. Delko and Acosta handled the payroll for Plaintiff and the similarly situated Undocumented Laundry Workers so HSHH and Myers could conceal the fact that they hired and exploited undocumented workers.

68. Defendants HSHH, Myers, Delko and Acosta tacitly came to a mutual understanding to withhold Plaintiff's as well as similarly situated Undocumented Laundry workers' wages for their own profit.

69. Defendants' actions are willful, reckless, and committed with conscious indifference to the rights of Plaintiff as well as similarly situated undocumented laundry workers.

70. Defendants HSHH, Myers, Delko and Acosta shared the same objective to exploit undocumented workers by stealing their wages.

71. Plaintiff and similarly situated Undocumented Laundry Workers were integral to Defendants' business.

72. Plaintiff and similarly situated Undocumented Laundry Workers were not compensated for their meal breaks.

73. Plaintiff and similarly situated Undocumented Laundry Workers, rarely were allowed to take a bona fide meal break of at least thirty (30) minutes.

74. Plaintiff and similarly situated Undocumented Laundry Workers' meal breaks were sometimes only (15) minutes.

75. There were even times when Plaintiff and similarly situated Undocumented Laundry Workers did not receive a meal break.

76. Plaintiff and other similarly situated Undocumented Laundry Workers' meal breaks should have been considered time worked. Pursuant to 29 CFR 785.18, rest periods of short duration, running from five (5) minutes to about twenty (20) minutes, must be counted as hours worked.

77. Because of Defendants' policies regarding meal breaks, Plaintiff and similarly situated Undocumented Laundry Workers regularly were not compensated for at least one to two hours per work week. This caused them to work additional hours without receiving overtime compensation.

78. Defendants willfully promulgated policies and practices that violated the FLSA.

79. Defendants' actions were not in good faith or based upon a reasonable belief that they were not violating applicable laws.

80. Defendants Myer and HSHH have been sued numerous times for wage theft yet they have continued their illegal policies. *9:18-cv-01574-BHH Diaz v. Housekeeping Services of Hilton Head LLC et al*, *9:18-cv-01341-BHH Bowers v. Housekeeping Services of Hilton Head LLC et al* and *9:17-cv-00800-PMD Isaman et al v. Housekeeping Services of Hilton Head LLC et al.*

## FIRST CAUSE OF ACTION
(Fair Labor Standards Act–Failure to Pay Overtime Wages)
(Individual and Collective Action)

81. Plaintiff, on behalf of herself and all similarly situated Undocumented Laundry Workers, reallege and incorporate by reference all preceding paragraphs as if they were set forth herein verbatim.

82. At all times, pertinent to this Complaint, each Defendant was an "enterprise engaged in commerce or in the production of goods for commerce" as that term is defined by 29 U.S.C. § 203(s).

83. At all times, pertinent to this Complaint, Plaintiff and similarly situated Undocumented Laundry Workers were "engaged in commerce or in the production of goods for commerce" as that term is defined within 29 U.S.C. §207.

84. At all times, relevant herein, each Defendants were "employers" of Plaintiff and similarly situated Undocumented Laundry Workers as that term is defined by 29 U.S.C. § 203(d) of the Fair Labor Standards Act.

85. Defendants employed Plaintiff and similarly situated Undocumented Laundry Workers for workweeks longer than forty (40) hours without compensating Plaintiff and similarly situated employees at a rate of one-and-a-half times their regular rate of pay as required by 29 U.S.C. § 207(a).

86. Plaintiff and similarly situated Undocumented Laundry Workers are entitled to unpaid overtime compensation at the rate of one-and-a-half times their regular rate of pay for all hours worked in excess of forty (40) hours in a workweek, liquidated damages in an equal amount, and their reasonable attorneys' fees and costs incurred in bringing this action pursuant to 29 U.S.C. § 216(b).

87. Defendants' violations of the FLSA were either willful or in reckless disregard of complying with the FLSA.

## FOR A SECOND CAUSE OF ACTION
(SCPWA)
(Individual and Class Action)

88. Plaintiff reallege and incorporate by reference all preceding paragraphs as if they were set forth herein verbatim.

89. Defendants HSHH, Myers, Delko and Acosta are "employers" as defined by S.C. Code Ann. § 41-10-10(1).

90. Defendants HSHH, Myers, Delko and Acosta took unlawful deductions from Plaintiff's and similarly situated Undocumented Laundry Workers hourly wage.

91. Defendants HSHH, Myers, Delko and Acosta did not provide Plaintiff's and similarly situated Undocumented Laundry Workers written notice of the deductions as required by the SCPWA.

92. Defendants owe Plaintiff's and similarly situated class members "wages" as defined in Section 41-10-10(2) of the Act, to compensate them for labor rendered to Defendants, as promised to them per their employment agreement with Defendants.

93. Defendants employed Plaintiff and similarly situated Undocumented Laundry Workers within the State of South Carolina.

94. According to § 41-10-80(C), when an employer separates an employee from the payroll for any reason, the employer shall pay all wages due to the employee within forty-eight hours of the time of separation or the next regular pay day which may not exceed thirty days.

95. Defendants failed to pay Plaintiff and Undocumented Laundry Workers all wages due, as required by Sections 41-10-40 and 50 of the Act.

96. Defendants' unlawful deductions from Plaintiff's and Undocumented Laundry Workers hourly wages was willful, without justification, and in violation of the duty of good faith and fair dealing.

97. Pursuant to Section 41-10-80(C) of SCPWA, Plaintiff and Undocumented Laundry Workers are entitled to recover an amount equal to three times the full amount of their unpaid wages, or their wrongfully deducted wages, plus costs and reasonable attorney's fees.

### FOR A THIRD CAUSE OF ACTION
(Unjust Enrichment)
(Individual and Class Action)

98. Plaintiff and similarly situated Undocumented Laundry Workers incorporate all allegations above into this cause of action.

99. If the Court or Jury determine that Defendants did not violate the SCPWA then a jury or Court could determine that the Defendants were unjustly enriched at Plaintiff's and similarly situated Undocumented Laundry Workers' expense.

100. Defendants took approximately $1.00 to $1.50 an hour from Plaintiff's a similarly situated Undocumented Laundry Workers' hourly wages.

101. Plaintiff's and similarly situated Undocumented Laundry Workers' labor conferred a non-gratuitous benefit on Defendants.

102. Defendants realized significant value from the benefit of Plaintiff's similarly situated Undocumented Laundry Laborers' work.

103. It would be inequitable for Defendants to retain the benefit without paying Plaintiff and the members of the Plaintiff's Class for the full value their work brought them.

104. As a result of Defendants' unjust enrichment, Plaintiff and the members of Plaintiff's Class are entitled to an award of damages against Defendants in amount to be determined by the trier of fact.

105. That as a direct and proximate result of said conduct on the part of Defendants, Plaintiff and similarly situated Undocumented Laundry Workers have been damaged as aforesaid, both actual and punitive, in such amount as a judge and jury may award.

### FOURTH CAUSE OF ACTION
CONVERSION
(Individual and Class Action)

106. Plaintiff and similarly situated Undocumented Laundry Workers incorporate by reference all preceding paragraphs as if they were set forth herein verbatim.

107. If the Court or Jury determine that Defendants did not violate the SCPWA then a jury or Court could determine that the Defendants unlawfully converted Plaintiff's and similarly situated Undocumented Laundry Workers' hourly wages to make the wages their own.

108. Defendants took $1.50, an hour from the Undocumented Laundry Worker wages such that a jury could find Defendants committed conversion.

109. Defendants were unjustly enriched at Plaintiff's and similarly situated Undocumented Laundry Workers' expense. Defendants also committed conversion against Plaintiff and similarly situated Undocumented Laundry Workers by not surrendering the money upon their request for the wages they earned.

110. Defendants converted said Plaintiff's and similarly situated Undocumented Laundry Workers' wages to their own use.

111. Defendants acted in bad faith in that they knowingly converted the Plaintiff's and similarly situated Undocumented Laundry Workers hard earned wages when, in the exercise of reasonable care, they should have known their actions were wrongful.

112. Plaintiff and similarly situated Undocumented Laundry Workers have suffered a loss of income and have been otherwise injured and damaged in such amount as a judge and a jury may determine.

113. Defendants' actions were without right or justification and constituted the conversion of Plaintiff's and similarly situated Undocumented Laundry Workers' wages.

114. Defendants committed conversion against the Plaintiff and similarly situated Undocumented Laundry Workers in the following manner:

   a. Wrongfully withholding their wages;

   b. Withholding their wages with the intent to permanently deprive and defraud them of the use and benefit of their full wages; and

   c. Withholding their wages with the intent to permanently appropriate them of their wages for Defendants' profit and greed.

### **FOURTH CAUSE OF ACTION**
### CIVIL CONSPIRACY
(Defendants Myers and Acosta)

115. Plaintiff and similarly situated Undocumented Laundry Workers incorporate all allegations above into this cause of action.

116. Defendants Myers and Acosta communicated with each other and came to a mutual understanding to unjustly enrich themselves at Plaintiff's and similarly situated Undocumented Laundry Workers expense.

117. Defendants Myers and Acosta communicated with each other and came to a mutual understanding to convert approximately $1.00 to $1.50 an hour of Plaintiff's and similarly situated Undocumented Laundry Workers' wages to for their profit.

118. The Defendants Myers and Acosta conspired to take money from Plaintiff's and similarly situated Undocumented Laundry Workers' wages for profit.

119. Defendant Myers and Acosta agreed to take $1.50 an hour from Plaintiff's and similarly situated Undocumented Laundry Workers' hourly wage for themselves.

120. Defendant Myers and Acosta agreed to this for the purpose of causing financial injury to Plaintiff and similarly situated Undocumented Laundry Workers.

121. Defendant Myers and Acosta's agreement caused Plaintiff and similarly situated Undocumented Laundry Workers special damage in that they were deprived of a substantial portion of their earned wages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all other similarly situated employees, seek judgment against the Defendants as follows:

a. That this Court certify this action as a collective action pursuant to 29 U.S.C. § 216 (b);

b. That this Court certify this action pursuant to Federal Rule of Civil Procedure 23;

c. Declaratory Judgment that the Defendants violated the FLSA;

d. Finding that Defendants' violation of the FLSA was willful;

e. Declaratory Judgment that the Defendants Acosta and Myers conspired to unjustly enrich themselves and convert Plaintiff's and similarly situated employees' wages for their own profit.

f. An award of compensatory damages in an amount equal to the unpaid overtime compensation owed to Plaintiff and similarly situated employees pursuant to 29 U.S.C. § 216(b);

g. An award of liquidated damages in an amount equal to the award of compensatory damages pursuant to 29 U.S.C. § 216(b);

h. An award of actual and compensatory damages;

i. An award of punitive damages as a result of Defendants' actions;

j. An award of the reasonable attorneys' fees and costs incurred by Plaintiff and similarly situated employees in bringing this action; and

k. Enjoining Defendants from committing further violations of the FLSA;

l. All such further relief as the Court deems just and equitable.

## JURY DEMANDED

Plaintiff Lima on her behalf and on behalf of all other similarly situated employees, hereby demands a trial by jury.

Respectfully submitted,

s/ Marybeth Mullaney
Marybeth Mullaney (Fed. Bar No. 11162)
Mullaney Law
652 Rutledge Ave Ste A
Charleston, South Carolina 29403
Phone (843) 588-5587
marybeth@mullaneylaw.net

*Attorney for Plaintiff*

December 12, 2022
Charleston, South Carolina.